ST. PAUL, J.
 

 (dissenting). On September 13, 1913, a certain agreement and understanding was entered into “between Messrs. D. P. J. Burguieres and Jules M. Burguieres, representing the J. M. Burguieres Company, and the Dulac Cypress & Shingle Company, hereinafter referred to as the Messrs. Burguieres, and Messrs. E. Sundberry and Lynn H. Dinkins, representing an operating company to be formed for the purpose herein named, hereinafter referred to as the Operating Company.”
 

 Which agreement and understanding evidences a
 
 joint adventure;
 
 the pertinent portions thereof being hereinafter given.
 

 Plaintiff herein is successor to the rights of the aforesaid “Messrs. Burguieres” ; and defendant is the “Operating Company” above mentioned.
 

 I.
 

 The contract provides, in substance, that the Operating Company shall be capitalized at $100,000, out of which it shall acquire a certain sawmill for $50,000; that the Messrs. Burguieres agree to sell, and the Operating Company agrees to buy, to manufacture and to market, some 100 million feet of cypress timber situated thereabout and owned or controlled by the Messrs. Burguieres; that the Operating Company shall pay the Messrs. Burguieres for their timber $4.-50 per 1,000 feet board measure, plus
 
 “one-half the net profits of the Operating Company”;
 
 that, at the termination of the contract, the stockholders of the Operating Company are to be reimbursed their investment in full (shares at par, plus accrued dividends), and the remaining' assets are to be equally divided between the Messrs. Burg
 
 *813
 
 uieres
 
 and the
 
 (stockholders of the) Operating Company.
 

 To put it tersely, the Operating Company was to furnish $100,000 working capital, and the Messrs. Burguieres were to supply the timber at $4.50 per 1,000 feet board measure ; the parties were then to share equally the profits arising from the manufacture and sale of the lumber.
 

 II.
 

 The question here presented is whether plaintiff, as successor to the Messrs. Burguieres, is liable for one-half the federal income tax paid by the Operating Company on
 
 its
 
 one-half share of the profits; which one-half of the income tax on the Operating Company’s half of the profits is being withheld by the Operating Company out of the half of the profits accruing to the Messrs. Burguieres. And plaintiff is now suing for the amount so withheld.
 

 III.
 

 The
 
 “net profits”
 
 of a corporation are, necessarily, only that residuum of profits which inures to the exclusive benefit of its
 
 stoelcliolders,
 
 and remains available
 
 for
 
 distribution as dividends or to increase the surplus. Hence, any attempt
 
 to
 
 divide the
 
 net
 
 profits of a corporation between its stockholders and outsiders is bound to prove quite as abortive as an attempt to make a part equal to the whole, or
 
 vice versa.
 
 For
 
 there are no net profits
 
 for the stockholders, and hence no net profits for the corporation, until all outsiders have received all that may be due them.
 

 Therefore, when one speaks of dividing between a corporation and an outsider the
 
 net profits of the corporation,
 
 he means nothing more than to divide the
 
 net profits of operation.
 

 And the whole confusion in this case arises from the failure to recognize this very obvious fact; and even the still more obvious fact that the division of profits should be made
 
 either before or after
 
 the payment of the income tax, but cannot be made
 
 both before and after'
 
 such payment. For, any way we look at it, the net profits of operation
 
 either are or are not
 
 net profits for the Operating Company. If they
 
 are
 
 net profits for the company, then the income tax on such net profits should be paid first, and the. division made only afterwards; if they
 
 are not
 
 net profits for the company, then the division should be made first and'the income tax paid afterwards. But manifestly, the company cannot first
 
 ascertain
 
 its net profits by deducting the
 
 lohole share
 
 of the Messrs. Burguieres, and afterwards
 
 increase those
 
 net profits by withholding a part of the share so deducted.
 

 But, as said above, the net profits of operation
 
 are not
 
 the net profits of the company ; for the share of the Messrs. Burguieres did not belong to the company, or inure to the benefit of the stockholders thereof. And hence, when the Messrs. Burguieres received, or were credited with,
 
 their share
 
 of the profits, the company was no longer concerned therein,-and owed no income tax thereon; nor, on the other hand, were the Messrs. Burguieres in any manner concerned in the share of the company, or liable for any part of the company’s income tax upon its share of the profits.
 

 IY.
 

 I therefore think the company should pay its own income • tax without contribution from the Messrs. Burguieres; and the Messrs. Burguieres (now the plaintiff) should be left to attend to the payment of their (its) own income tax without regard to what has been paid by the company.
 

 My conclusion is that the plaintiff should recover, and I therefore dissent.